.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>PLATFORMS WIRELESS INTERNATIONAL, CORP., et al.,<br><br>                    Defendants. | CASE NO. 04 CV 2105 JM (AJB)<br><br>**SUPPLEMENTAL ORDER GRANTING PARTIAL SUMMARY JUDGMENT RE: DISGORGEMENT OF PROFITS AND CIVIL MONETARY PENALTIES** |
|---|---|

Pending before the court is the parties' supplemental briefing regarding disgorgement of profits and civil monetary penalties in connection with a partial summary judgment granted against defendants. Order of Jan. 8, 2007 ("Order"). Plaintiff Securities and Exchange Commission ("SEC") was granted partial summary judgment on the issue of whether Defendants Platforms Wireless International Corporation ("Platforms"), William Martin, and Francois Draper violated § 5 of the Securities Act of 1933 (the "Act") when they failed to register certain securities before transferring them. 15 U.S.C.A. § 77e. See Docket No 75. After considering the parties' papers, the court hereby **ORDERS** disgorgement of profits from Platform and Martin for the reasons set forth below and **ORDERS** civil monetary penalties against Platform and Martin in the amounts set forth below.

## I.     BACKGROUND

On January 8, 2007, the court granted the SEC's motion for partial summary judgement and determined that defendants violated § 5 of the Securities Act of 1933 as a matter of law. Injunctions, disgorgement of profit, and civil monetary penalties were considered for defendants Martin, Draper,

1  and Platforms.[1] The court then ordered further briefing on the remedial issues of 1) the amount to be
2  disgorged from Martin and Platforms and 2) the amount of civil monetary penalties to be assessed
3  against Martin and Platforms. Specifically, this court expressed concern whether Martin and Platforms
4  could be required to disgorge $1,756,861 when that figure includes the $402, 920 the court ordered
5  disgorged from Draper.  This order  addresses the decision of the court regarding disgorgement of
6  profits and civil monetary penalties.[2]

7  **I.     DISGORGEMENT OF PROFITS: MARTIN AND PLATFORMS**

8  "Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others
9  from violating securities laws by making violations unprofitable."  SEC v. First Pacific Bancorp, 142
10 F.3d 1186, 1191 (9th Cir. 1998).  The district court has broad discretion in assessing the disgorgement
11 of these "ill-gotten gains" obtained through securities law violations. Id.

12 Determining the proper amount to be disgorged requires only a "reasonable approximation of
13 profits causally connected to the violation." First Pacific Bancorp, 142 F.3d at 1192.  Moreover, any
14 disgorgement amount should include "all gains flowing from the illegal activities." SEC v. JT
15 Wallenbrook, 440 F.3d 1109, 1114 (9th Cir. 200)(*quoting* SEC v. Cross Fin. Servs., 908 F.Supp 718,
16 734 (C.D. Cal. 1995)).  The gains that flowed from the illegal activity have been calculated to the
17 penny and total $1,756,861.  Leete Decl. ¶ 2c.

18 The SEC argues that Martin and Platforms are jointly and severally liable for the entire amount
19 of profit attributed to the illegal sale of the stocks and therefore the court should order disgorgement
20 in the amount of $1,756,861 from Martin and Platforms, even though that amount includes Draper's
21 illegal profits.  In response, Martin and Platforms argue they did not profit from the illegal transfers
22 / / /
23 / / /

---

[1] The following penalties were ordered: 1) Injunctive relief was granted against Martin and Platforms but not against Draper; 2) Draper was fined a civil penalty of $20,000; and 3) Assessment of civil penalties against Martin and Platforms was delayed until the proper disgorgement amount was determined.

[2] Defendants submitted a "supplemental memorandum" after the SEC filed their reply memorandum, without leave of the court and in violation of local rules. CivLR 7.1(e)(7). Thereafter, the SEC filed a motion to strike the additional briefing and replied to its contents. The "supplemental opposition" filed by the defendants and the SEC's reply to the additional arguments were disregarded for purposes of this Order.

that were the basis of their liability and, therefore, the amount Defendants recommends should be disgorged from them is zero.[3] Oppo. at 2.

### A.  Amount To Be Disgorged: Martin and Platforms's Ill-Gotten Gains:

Defendants appear to argue there is no authority for disgorging profits from Martin and Platforms because their liability is derivative from the wrongful act of a third person and Martin or Platforms never directly profited because they did not actually sell any of the illegally distributed stock to the public. Oppo at 2-3. Martin and Platforms do "not have to be involved in the final step of distribution to have participated in it." Geiger v. SEC, 363 F.3d 481, 487 (D.C. Cir. 2004)(Holding defendant did not have to have participate in the final distribution of the shares into the public because distribution of shares refers to the entire process from initial disbursement to the ultimate sale of the shares to the public and any ill gotten gains that result from that distribution are subject to disgorgement.)

Defendant's also rely on Hately v. SEC but their reliance is misplaced. Hately, 8 F.3d 653 (9th Cir. 1993). In Hately, there was an preexisting agreement between the defendants that specifically dictated how profits would be split: 90% of the profits were to be paid to one defendant and the other defendant was to receive the remaining 10%. Id. at 655. The court found that any amount of disgorgement must be approximately equal to what each defendant received *as dictated by the prior arrangement*. Id. at 655. The court in J.T. Wallenbrook makes effort to distinguish its holding from Hately finding that "[h]ere, there was no preexisting agreement limiting the defendants to only a share of the ill-gotten gain or requiring them to pay a portion of the proceeds to third parties." JT Wallenbrook, 440 F.3d at 1116.

Over 17 million unregistered shares were eventually sold on the public market as a direct result of Martin and Platforms. Intermedia, an affiliate wholly owned and operated by Martin and Platforms, was solely responsible for introducing all of the unregistered shares into the stream of commerce. The proceeds from the public sale of the shares, though never in the hands of Martin or

---

[3] The court has already determined that disgorgement of profits from the Defendants is proper. Therefore, the Defendant's recommendation that no money be disgorged because Defendants received no ill-gotten gains is contrary to the court's findings. The court asked how *much* is attributable to each defendant as ill-gotten gains, not whether or not disgorgement is proper. Order at 7:17. Defendants argument supporting their theory that they received no ill-gotten gains is addressed in the appropriate section of this Order.

Platforms, were in their control because Martin and Platforms had complete control, via Intermedia, as to the distribution of the stocks and distributed the securities to Draper and others. Defendants further argue that profits which continue to fund illegal activities may be disgorged but profits used to fund the ongoing operations of the business may not be disgorged. Oppo at 2:21. However, no authority was cited for this proposition. Contrary to Defendant's claim, disgorgement of profits may not be offset by business expenses.[4] JT Wallenbrook, 440 F.3d at 1115-6.

The illegal profits that are the subject of this inquiry are a result of the illegal distribution of stocks by Martin and Platforms, through Intermedia, and total $1,756,861. Martin's attempt to "distance himself from the transaction" by not participating in the final sale of the stocks to the public does not relieve him of responsibility. Order at 8:15. The next issue this court must address is whether joint and several liability is appropriate.

### B.  Joint and Several Liability

Joint and several liability is appropriate when multiple persons or entities collaborate or have a close relationship in engaging in the violation. First Pacific Bancorp, 142 F.3d at 1191.

Platforms, Martin, and Intermedia share a close relationship and collaborated in engaging in the violation. Martin is CEO of Platforms and was CEO at the time of the illegal transfers. Martin played a principal role in the violation by transferring the stocks first through Intermedia, an affiliate of Platforms which Martin exercised control over, and ultimately on to Draper and others. Order at 4:20. Martin and Platforms collaborated with Draper and others as shown by the transfer of over 17 million shares which extended over a period of two calendar years and resulted in the ultimate sale of the illegally transferred stocks to the public. Martin and Platforms may therefore be held "jointly and severally liable for their jointly undertaken violations of the securities law." First Pacific Bancorp, 142 F.3d at 1192.

Accordingly, the court holds Martin and Platforms jointly and severally liable and orders disgorgement in the amount of $1,756,861 plus interest as set forth in the Leete Declaration. Leete Decl. ¶ 3c.

---

[4] The Court does note limited circumstances where expenses may be deducted from the disgorgement amount and offers as an example a broker who may be entitled to deduct expenses "customarily incurred in the purchase and sale of such stock if the investor would have had to pay for such expenses in any legitimate transaction." JT Wallenbrook, 440 F.3d at 1114.

**III.    CIVIL MONETARY PENALTIES**

The court left open the imposition of civil monetary penalties as to Martin and Platform pending the determination of appropriate disgorgement amounts.  Now that disgorgement is decided, the court will address the imposition of civil monetary penalties.

In its previous order, the court determined the imposition of civil monetary penalties under the first tier is appropriate.  The range of penalties for Martin, a natural person, under this tier is between $5,000 and the gross amount of pecuniary gain, $1,756,861.  15 U.S.C.A. § 77t(d)(2)(A) (2002).  The range of penalties for Platforms, a corporation, under this tier is $50,000 to $1,756,861, the gross amount of pecuniary gain.  Id.  To determine proper civil monetary penalties, courts look to the egregiousness of the violation, the defendant's scienter, the repeated nature of the violations, defendant's failure to admit wrongdoing, whether the defendant's conduct created a substantial loss or risk of substantial loss to others, the defendant's lack of cooperation, and the defendant's current and future financial condition.  See SEC v. Lybrand, 281 F. Supp. 2d 726, 730 (S.D.N.Y. 2003).

The Defendants recommend that Martin pay, if anything, no more than $5,000 and Platforms, if anything, no more than $50,000 because, according to Defendants, Martin and Platforms did not receive any ill-gotten gains as a result of the violation.  The SEC left the actual amount of the penalty to the discretion of the court but argued the penalties should be substantially greater than the penalty assessed against Draper because the mitigating circumstances this court took into consideration in setting Draper's fine do not apply to Martin and Platforms but rather, several aggravating factors exist.

In assessing Martin's civil monetary penalty, aggravating circumstances exist which justify imposing a penalty above $5,000. First, Martin continues his work at Platforms. Second, The amount of shares traded - 17,450,000 - was substantial.  Third, there is evidence that Martin deliberately disregarded the registration requirement because he knew Intermedia was an affiliate. Order at 11:6-7.  And finally, This is not Martin's first violation of federal securities law. Order at 8:5-6.  Therefore, Martin's culpability is greater than that of Draper, who was fined $20,000.  The assessment of civil penalties should reflect this differential in culpability.

/ / /

/ / /

The Mitigating circumstances contemplated in assessing the fine against Draper were: 1) this was Draper's first violation of federal securities law and; 2) his work for Platforms is mostly technical. As to Martin and Platforms, neither of these circumstances are applicable. Moreover, an injunction was not granted against Draper but was found appropriate against Martin and Platforms. The injunction was granted as to Martin and Platforms because: 1) Martin affirmatively distanced himself from the transactions because he was aware of his insider status; 2) Martin has a prior conviction for conspiracy to commit an offense against or to defraud the United States and; 3) The extended period of time in which the violations took place showed this was not an isolated incident. Order at 8:15-16. The penalty must reflect the existence of several aggravating factors and the absence of any mitigating factors. Accordingly, this court imposes a penalty of $50,000 against Martin and a penalty of $125,000 against Platforms.

## IV. CONCLUSION

For the foregoing reasons, the court **ORDERS** disgorgement of profits from Platforms and Martin in the amount of $1,756,861 plus interest as set forth in the Leete Declaration.[5] Martin and Platforms are JOINTLY AND SEVERALLY LIABLE for the full amount.

The court further **ORDERS** civil monetary penalties in the amount of $50,000 as to Martin and $125,000 as to Platforms.

**IT IS SO ORDERED.**

DATED: April 30, 2007

Hon. Jeffrey T. Miller
United States District Judge

cc: All Parties

---

[5] If Draper satisfies his judgement in full, Martin and Platforms will be responsible for the remaining amount or $1,353,941.