UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>PLATFORMS WIRELESS INTERNATIONAL CORP., et al.,<br><br>　　　　　　　　　　Defendants. | CASE NO. 04 CV 2105 JM (AJB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR RECONSIDERATION AND FOR STAY**<br><br>**(Doc. Nos. 125, 126, 157)** |

In this SEC enforcement action, the court has granted summary judgment on all but one of the SEC's claims. Before the court are Defendants' motions for reconsideration of these summary judgment rulings and Defendants' motions for stay of the judgment. For the reasons set forth below, the court hereby **GRANTS IN PART** and **DENIES IN PART** the motions for reconsideration and motions for stay.

**I.   BACKGROUND**

The SEC alleges that defendants Platforms Wireless, William Martin, Francois Draper, Charles Nelson, and Robert Perry made false and misleading statements to the public to influence the price of Platforms Wireless stock. At the pertinent period of time, Martin, Nelson, Perry, and Draper were alleged officers and/or directors of Platforms Wireless. The complaint asserts violations of § 5 of the Securities Act of 1933, 15 U.S.C. § 77e; § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.

1 § 78j(b); and Rule 10b-5 promulgated under § 10(b), 17 C.F.R. § 240.10b-5.[1]

In a sequence of orders, the court granted summary judgment on all of the SEC's claims against all of the defendants with the exception of the Rule 10b-5 claim against defendant Nelson. (See Doc. nos. 75 ("§ 5 Order"), 105 ("Rule 10b-5 Order"), 108 ("Supp. § 5 Order").) On July 2, 2007, the court further clarified these orders in a grant of partial reconsideration. (Doc. no. 112.) Nelson subsequently entered into a stipulated judgment with the SEC (Doc. no. 130), and on July 31, 2007, the court entered a final judgment as to Nelson (Doc. no. 131) and as to Platforms, Martin, Perry, and Draper (Doc. no. 128). The court entered an amended final judgment against Platforms, Martin, Perry, and Draper on August 6, 2007. (Doc. no 138.)

On July 25, 2007, Platforms, Martin, and Perry collectively moved for reconsideration of the court's summary judgment rulings under Federal Rules of Civil Procedure ("FRCP") 59 and 60. (Doc. no. 125 ("Platforms' Mot. for Recons.").) They also moved for a stay of the judgment awarding injunctive and monetary relief. (Doc. no. 126 ("Platforms' Mot. for Stay").) The court held a hearing on these motions on August 24, 2007. Defendant Draper thereafter filed a motion for reconsideration under FRCP 60 and for a stay under FRCP 62.[2] (See Doc. no. 157 ("Draper's Mot.").) The SEC filed a timely opposition and Draper a timely reply.[3] The court found this motion appropriate for submission on the briefs. See Civ. L.R. 7.1(d)(1).

//
//
//
//

---

[1] For the sake of simplicity, this order will generally use the term "Rule 10b-5 claims" to refer to the claims arising under § 10(b) and Rule 10b-5.

[2] In Draper's separate motion, Draper incorporates by reference Platforms' motion for reconsideration. Unless otherwise noted, this order's references to "Defendants" shall refer to all defendants, and the references to Defendants' arguments shall refer to the arguments shared by all defendants. Any references to issues raised in Draper's individual motion will be specifically noted.

[3] As Draper highlights in his reply brief, the SEC's opposition brief contains arguments regarding the liability of defendants other than Draper. (See Doc. no. 163 ("Draper's Reply") at 7 n.6.) These arguments were inappropriately raised in opposition to Draper's motion and will not be considered by the court.

## II.     DISCUSSION

### A.     Motions for Reconsideration

#### 1.     Legal Standards

"A district court may reconsider its grant of summary judgment under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment)." Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc., 5 F.3d 1255, 1262 (9th Cir. 1993).

Reconsideration under Rule 59(e) is proper when the court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." Sch. Dist. No. 1J, 5 F.3d at 1263. Highly unusual circumstances also warrant reconsideration. Id. "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003). Accordingly, "[a] district court has discretion to decline to consider an issue raised for the first time in a motion for reconsideration." Novato Fire Protection Dist. v. United States, 181 F.3d 1135, 1142 n.6 (9th Cir. 1999).

Under Rule 60(b), a court may grant reconsideration on the grounds of, inter alia, "mistake, inadvertence, surprise, or excusable neglect." FRCP 60(b)(1). The "mistake" component of Rule 60(b)(1) allows a court to correct its own error of law. See Kingsvision Pay-Per-View v. Lake Alice Bar, 168 F.3d 347, 350 (9th Cir. 1999) (citing Liberty Mut. Ins. Co. v. Equal Employment Opportunity Comm., 691 F.2d 438, 441 (9th Cir. 1982)). The "excusable neglect" component of Rule 60(b)(1) includes cases of negligence, carelessness, and inadvertent mistake by counsel. Bateman v. United States Postal Serv., 231 F.3d 1220, 1223-24 (9th Cir. 2000) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 381 (1993)). In determining whether neglect is excusable, courts employ an equitable test "that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." Bateman, 231 F.3d at 1223-24 (9th Cir. 2000) (citing Pioneer, 507 U.S. at 395); see also Briones v. Riviera Hotel & Casino, 116 F.3d 379, 381 (9th Cir. 1997). Generally, "parties are bound by the actions of their lawyers, and

1 alleged attorney malpractice does not usually provide a basis to set aside a judgment pursuant to Rule
2 60(b)(1)." Casey v. Albertson's Inc., 362 F.3d 1254, 1260 (9th Cir. 2004).

### 2. Rule 10b-5 Liability

Defendants claim that the court committed clear error in granting summary judgment on the Rule 10b-5 claims.

#### a. Scienter Standard

Defendants first argue that the court used the wrong scienter standard. Citing Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1568-69 (9th Cir. 1990) (en banc), the court stated that "[s]cienter is established upon proof that the defendant acted knowingly or recklessly." (Rule 10b-5 Order at 4.) Hollinger defined recklessness as "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." Hollinger, 914 F.2d at 1569. Defendants contend that the correct formulation of the standard is "deliberate recklessness," which requires proof of a conscious disregard and awareness of the risk of harm. (See Platforms' Mot. for Recons. at 22.) The Ninth Circuit explained this standard in In re Silicon Graphics, Inc. Securities Litigation, 183 F.3d 970, 977 (9th Cir. 1999). The Silicon Graphics court held that "deliberate recklessness" was the requisite state of mind for a § 10(b) violation. See Silicon Graphics, 183 F.3d at 977. "[R]ecklessness only satisfies scienter under § 10(b) to the extent that it reflects some degree of intentional or conscious misconduct." Id.

The parties give fullest expression to the debate over Silicon Graphics in the briefing on Draper's separate motion. The SEC argues that Silicon Graphics did not change the scienter standard established in Hollinger. (See SEC's Oppo. to Draper's Mot. at 3.) According to the SEC, the Ninth Circuit continues to cite Hollinger as the leading authority regarding recklessness in the § 10(b) context, and "Silicon Graphics itself clearly reaffirmed Hollinger" by similarly adopting the language of Sundstrand Corp. v. Sun Chemical Corp., 553 F.2d 1033, 1044-45 (7th Cir. 1977). (SEC's Oppo. to Draper's Mot. at 3 (citing Howard v. Everex Systems, Inc., 228 F.3d 1057, 1064 (2000), in support of SEC's interpretation).) Rather than creating a heightened scienter standard for summary judgment

in SEC enforcement actions, the SEC claims, Silicon Graphics only established a heightened pleading standard for private plaintiffs under the Private Securities Litigation Reform Act of 1995 ("PSLRA").

Defendants disagree that Silicon Graphics' only real impact was on the pleading standard under the PSLRA. Instead, while agreeing that Silicon Graphics did not elevate the § 10(b) scienter standard, Defendants contend that Silicon Graphics clarified Hollinger in an important way: Silicon Graphics made clear that recklessness, as defined in Hollinger, has a subjective component. (See Draper's Reply at 4-7.[4]) Defendants further contend that the Ninth Circuit case law following Silicon Graphics confirms this interpretation. See, e.g., SEC v. Rubera, 350 F.3d 1084, 1094-96 (9th Cir. 2003) (citing both Hollinger and Silicon Graphics in affirming district court's finding that defendant lacked intent or recklessness); Ponce v. SEC, 345 F.3d 722, 731 (9th Cir. 2003) (citing only Hollinger but employing largely subjective analysis); Ronconi v. Larkin, 253 F.3d 423, 430 (9th Cir. 2001) (applying Silicon Graphics' "deliberate recklessness" standard).

The court agrees with Defendants. In granting summary judgment on the Rule 10b-5 claims, the court relied only on Hollinger in analyzing scienter. The parties also failed to mention Silicon Graphics or "deliberate recklessness" in their briefing. In any event, the court neglected to evaluate scienter in light of Silicon Graphics' "deliberate reckless" formulation. Even if "deliberate recklessness" is not a higher standard but merely a clarification of or gloss on Hollinger, it still emphasizes the requirement of "some degree of intentional or conscious misconduct" – a degree of scienter not contemplated by the court's 10b-5 Order. See Silicon Graphics, 183 F.3d at 977. This error calls for reconsideration under Rules 59(e) and 60(b)(1).

In light of this error, the court orders the parties to submit further briefs applying the correct scienter standard in regard to Martin and Perry, as set forth at the end of this order. The court does not require additional briefing as to Draper. After the additional briefing is complete, the court will determine whether application of the deliberate recklessness standard requires reversal or modification of any of the Rule 10b-5 rulings.

//

---

[4]The court assumes for purposes of this discussion that all defendants agree with the legal positions argued in Draper's motion.

### b. "Bespeaks Caution" Defense

Defendants also argue that the court's materiality analysis failed to account for their "bespeaks caution" defense. Defendants contend that they impliedly asserted this defense when they argued various statutory and regulatory safe harbors under the securities laws – namely, Rule 175 of the Securities Act of 1933 and Rule 3b-6 of the Securities Exchange Act of 1934. (See Platforms' Mot. for Recons. at 23:8-11.) Contrary to this claim, Defendants never argued the common-law bespeaks caution defense during summary judgment. While they had the opportunity to argue the defense, their references to Rules 175 and 3b-6 were insufficient to raise the defense by implication. Moreover, the court finds that its original order adequately addressed why the Rules 175 and 3b-6 defenses were unavailable to Defendants. (See Rule 10b-5 Order at 9 n.4.) The court therefore denies reconsideration on this basis.

### c. Draper's Liability for May 15, 2000 Press Release

In his separate motion, Draper additionally asks the court to reconsider the ruling against him based on Platforms' May 15, 2000 press release. (See Draper's Mot. at 10; see also Platforms' Mot. for Recons. at 7-8 (raising same issue).) The court had found Draper liable for both the May 15, 2000 and March 8, 2001 press releases. (See Rule 10b-5 Order at 5-6.) Based on these two violations, the court imposed against Draper a permanent injunction, a seven-year officer bar and penny-stock bar, and an $80,000 civil penalty under 15 U.S.C. §§ 77t(d) and 78u(d)(3). At the hearing on Platforms' motion for reconsideration, the SEC conceded that Draper should not have been held liable for the May 15, 2000 press release because Draper did not join Platforms until June 2000. (See Aug. 24, 2007 Tr. at 23:25-25:7.)

In light of this concession and the corresponding mistake of fact in the Rule 10b-5 order, the court hereby vacates the grant of summary judgment against Draper based on Rule 10b-5 liability for the May 15, 2000 press release. Accordingly, the court also reduces the civil penalty from $80,000 (based on two press releases) to $40,000 (based on one press release), without prejudice to a determination that Draper should not bear liability for the March 8, 2001 press release. The court will also consider Draper's non-liability for the May 15, 2000 press release in any potential modification of the other relief awarded against Draper.

####    d.    Summary: Rule 10b-5 Claims

In sum, the court grants reconsideration of the Rule 10b-5 liability holdings on two grounds: (1) the court should have applied Silicon Graphics' "deliberate recklessness" scienter standard, and (2) the court erred in finding Draper liable for the May 15, 2000 press release. The parties shall submit further briefing related to the scienter issue as set forth at the end of this order.

### 3.    Section 5 Liability

Next, Defendants suggest that the court committed clear error in granting summary judgment on the § 5 claims because the SEC failed to defeat their defenses. Defendants also submit that, even if the court did not commit legal error, the shortcomings in Defendants' arguments resulted from mistake, surprise, inadvertence, or excusable neglect. See FRCP 60(b)(1).

####    a.    Section 4(1) and Rule 144's Safe Harbor

Defendants specifically underscore their contentions that the stock transfers fell within § 4(1) of the Securities Act of 1933, 15 U.S.C. § 77d(1), and/or Rule 144's safe harbor, 17 C.F.R. 230.144. In the § 5 order, the court expressly addressed why these defenses were not legally viable. A second review of this analysis demonstrates that the court did not commit clear error. The lynchpin of the analysis was Intermedia's affiliate status. For the reasons stated in the order, the SEC established this status as a matter of law. (See § 5 Order at 4-5.) Thus, this argument provides no basis for reconsideration of the court's ruling.

####    b.    Rule 502

Likewise, Defendants fail to persuade the court that they raised triable issues of fact regarding whether Platforms and Martin took reasonable precautions under Rule 502 to ensure that Intermedia – the purchaser of the securities – was not an underwriter. See 17 C.F.R. § 230.502(d). The court evaluated the merits of these arguments in the § 5 order and reconsideration is unwarranted. (See § 5 Order at 5-7.)

####    c.    Scienter

Defendants also argue that the court failed to require a showing of scienter in granting injunctions on the § 5 violations. Because scienter is not an element of a § 5 violation, this argument fails. See, e.g., SEC v. Phan, 500 F.3d 895, 901-02 (9th Cir. 2007) (citing elements of prima facie §

1  5 violation as stated in Berckeley Inv. Group Ltd. v. Colkitt, 455 F.3d 195, 212 (3d Cir. 2006)); SEC
2  v. Calvo, 378 F.3d 1211, 1215 (11th Cir. 2004) (citing SEC v. Alpha Telcom, Inc., 187 F. Supp. 2d
3  1250, 1263 (D. Or. 2002)); SEC v. National Executive Planners, Ltd., 503 F. Supp. 1066, 1072
4  (M.D.N.C. 1980).

### d.  "New" Evidence in the SEC's Reply Brief

Defendants claim that they never received an opportunity to respond to the "new" evidence regarding Martin's control over Intermedia submitted in the SEC's reply brief. While Defendants attribute this alleged error to the SEC, their argument suggests that the court erred in awarding summary judgment based on the "new" evidence. This argument contradicts the facts. Briefing on the SEC's § 5 summary judgment motion was complete on August 14, 2006, when the SEC filed its first reply brief. (See Doc. no. 46.) The hearing date on that motion was then continued from August 18, 2006 to November 17, 2006. (See Doc. no. 52.) Counsel for Defendants appeared at the November 17, 2006 hearing, by which time counsel had more than two months to prepare oral argument in response to the SEC's reply. (See Doc. no. 59.) Defendants never objected to the evidence submitted with the SEC's reply brief, and in fact impliedly conceded at oral argument that Defendants had no evidence that Martin's ex-wife – rather than Martin, himself – controlled Intermedia. (See Nov. 17, 2006 Tr. at 18-19.) Thus, the argument that summary judgment was inappropriate because Defendants had no chance to respond to the SEC's reply lacks merit.[5]

### e.  Mistake, Surprise, Inadvertence, or Excusable Neglect

Defendants additionally seek reconsideration under Rule 60(b)(1) on the ground that any fault attributed to them resulted from "mistake, surprise, inadvertence or excusable neglect." (Platforms' Mot. for Recons. at 16.) They focus largely on Wilson's alleged neglect and submit Wilson's declaration in support of this claim. In light of the considerations germane to the determination of excusable neglect, the court finds that Defendants have failed to demonstrate equitable circumstances

---

[5]Defendants' attorney Rebecca Wilson also contends that she filed a supplemental brief that the court "disregarded." (Platforms' Mot., Wilson Decl. at ¶ 6.) The court struck this brief on the SEC's motion because Defendants filed the brief without leave of court after the SEC filed its response to the court's order seeking supplemental briefing on the disgorgement remedy under § 5. Moreover, while Wilson argues that the stricken brief addressed new issued raised by the SEC's reply, the alleged "new issues" were simply those raised by the opposition.

justifying relief. See Bateman, 231 F.3d at 1223-24 (factors include reason for delay; length of delay and possible impact on proceedings; movant's good faith or lack thereof; danger of prejudice to opponent).

First, Wilson contends that her clients' § 5 defenses suffered because she "understandabl[y]" relied on the SEC's framing of the issues in drafting Defendants' opposition. (Platforms' Mot., Wilson Decl. at ¶ 3.) Wilson so relied at her own peril. Furthermore, Wilson's reliance upon the SEC's "[concession] that neither Francois Draper nor Benefit Consultants were affiliates" (Wilson Decl. at ¶ 3) is irrelevant. The issue Defendants raised in their opposition was whether Intermedia was an affiliate – not Draper and Benefit Consultants.

Wilson further contends that, had she known the SEC would submit evidence of Martin's control of Intermedia in the SEC's reply, she would have "submitted substantially more detailed facts related to the Defendants' defenses[.]" (Wilson Decl. at ¶ 4.) Defendants claim that their surprise excuses their failure to respond to this evidence. The court finds this argument meritless. The SEC did not address the issue of Intermedia's affiliate status in its opening brief because Defendants admitted this fact in their answer. (See Answer at ¶ 17 (admitting allegation that Martin at all times wholly owned and controlled Intermedia).) In direct contradiction to their answer, Defendants opposed the summary judgment motion on the ground that the SEC had submitted no evidence showing Intermedia was controlled by Martin and an "affiliate" of Platforms. Only after Defendants raised the control issue in their opposition did the SEC submit, in their reply, the evidence showing that Martin in fact exercised control over Intermedia. This evidence was also available to Defendants. Thus, Defendants' argument that the SEC's reply took them by surprise seems disingenuous and undercuts the appearance that Defendants seek reconsideration in good faith.[6]

Finally, Wilson argues that she "likely misinterpreted the Court's order seeking briefing" on

---

[6] Additionally, after the completion of briefing on the SEC's motion for summary judgment on § 5 liability, Defendants moved to amend their answer to deny the allegation that Intermedia was an affiliate. (See Doc. no 49, filed Aug. 23, 2006.) The motion contended that Defendants made this admission inadvertently. This sequence of events suggests that counsel in hindsight regretted admitting a material allegation and then, when faced with adverse circumstances during summary judgment, tried to undo what had already been done. This bolsters the conclusion that Defendants could not have been surprised by the SEC's addressing the control issue in the reply rather than the opening brief.

1  the amount that should be disgorged from Martin and Platforms in connection with the § 5 rulings.
2  (Wilson Decl. at ¶ 6.) This contention also provides no basis for relief. The court notes that the SEC
3  was able to interpret correctly the court's order for further briefing.

4  Defendants fail to persuade the court that the reasons for their counsel's neglect justify
5  reconsideration. They have also failed to convince the court that they seek reconsideration in good
6  faith. See Bateman, 231 F.3d at 1223-24. While the question of potential prejudice neither favors nor
7  disfavors reconsideration – reversal would strip the SEC of its favorable judgment, but Defendants
8  would suffer prejudice if the sizeable judgments were incorrect – the court finds reconsideration
9  inappropriate under Rule 60(b)(1).

10 **f.     Summary: Section 5 Claims**

11  In sum, the court denies Defendants' motion to reconsider its judgments finding Defendants
12  liable under § 5.

13 **4.     Relief Granted**

14  Separate from the issue of pure liability, Defendants also seek reconsideration of both the
15  monetary and non-monetary relief granted in the court's summary judgment rulings.

16 **a.     Disgorgement Calculation**

17  Defendants argue that the SEC's calculation of both the § 5 and Rule 10b-5 disgorgement
18  remedies did not reasonably approximate Defendants' profits. They rely in part on the fact that the
19  SEC did not trace funds beyond the initial acquisition by Draper and Benefit Consultants, an entity
20  owned by Draper. As the SEC pointed out, however, tracing is not required to prove a disgorgement
21  sum. See SEC v. First Pacific Bancorp, 142 F.3d 1186, 1192 n.6 (9th Cir. 1998) (citing SEC v.
22  Hughes Capital Corp., 917 F. Supp. 1080, 1085 (D.N.J. 1996), aff'd 124 F.3d 449 (3d Cir. 1997)).
23  Additionally, the SEC supported its disgorgement calculations with Jennifer Leete's declaration,
24  which eventually formed the basis of the court's judgment. Defendants had the opportunity but failed
25  to come forth with any evidence showing that the Leete declaration inaccurately calculated ill-gotten
26  gains. Defendants merely made the legal argument that "there is no authority for disgorging 'profits'
27  from control persons whose liability is merely derivative of some wrongful act by a third person."
28  (See Oppo. to SEC's Mot. for Summ. J. on § 5 claims at 13:6-7.) The court thoroughly addressed this

1  legal argument's lack of merit in the supplemental order filed April 30, 2007, and Defendants have
2  provided no basis for finding that the court's analysis was clearly erroneous.

3  Additionally, Defendants argue that the SEC's disgorgement estimates did not offset the value
4  of Martin's and Draper's services to Platforms. Defendants claim these services were the
5  consideration paid for the shares. Draper also claims that the § 5 disgorgement ordered against him
6  constituted reimbursement of business expenses. Although Defendants had the opportunity to make
7  these arguments during the original motion, they failed to do so. These arguments thus do not provide
8  grounds for reconsideration. See Carroll, 342 F.3d at 945. Furthermore, during the original motion
9  Defendants failed to submit any evidence of the monetary value of Martin's and Draper's services,
10 upon which the court could calculate any offset.

11 For the reasons set forth above, the court denies the request to reconsider the amounts
12 disgorged based on alleged errors in estimation or calculation. Any change in the amount disgorged
13 will only be a produce of a change in the liability determination. Thus, only the amounts disgorged
14 for Rule 10b-5 liability may be affected.

15 **b.     Injunctive Relief**

16 In both the Rule 10b-5 and § 5 contexts, Defendants also claim that genuine issues of fact exist
17 regarding the appropriateness of injunctive relief. The court permanently enjoined Martin, Platforms,
18 and Draper from future violations of § 10(b) and Rule 10b-5. The court also permanently enjoined
19 Martin and Platforms from future violations of § 5. The court granted no injunctive relief against
20 Perry. Because the court's rulings were not clearly erroneous, this argument lacks merit.

21 "The primary purpose of injunctive relief against violators of the federal securities laws is to
22 deter future violations, not to punish the violators." SEC v. Koracorp Indus., Inc., 575 F.2d 692, 697
23 (9th Cir. 1978) (citing Hecht Co. v. Bowles, 321 U.S. 321, 329 (1944)). On summary judgment, the
24 appropriateness of injunctive relief depends on whether a genuine issue of fact exists as to the
25 reasonable likelihood that a defendant will commit future securities violations. See id. at 698.
26 "Promises of reformation and acts of contrition are relevant in deciding whether an injunction shall
27 issue, but neither is conclusive or even necessarily persuasive, especially if no evidence of remorse
28 surfaces until the violator is caught." Id.

As to Draper's Rule 10b-5 liability, the court found injunctive relief proper because Draper had a high degree of scienter, was responsible for multiple misleading statements, and still worked in the telecommunications business. (Rule 10b-5 Order at 17.) Draper came forth with no evidence to rebut this inference during the original motion. Nevertheless, as this order makes clear, the rulings against Draper have since been called into question. The court defers ruling on the injunction against Draper until the parties have completed further briefing on the scienter issue.

As to Martin and Platforms, the court first found injunctive relief proper under § 5. The SEC presented evidence that Martin had suffered a 20-year-old misdemeanor conviction for violation of the securities laws. When considered alongside the present violations, this conviction gives rise to an inference that Martin likely would violate the securities laws in the future. The only evidence Defendants presented in response was Martin's declaration expressing regret for his mistakes. This evidence, which focuses on Martin's remorse for past actions, did not create a genuine issue as to whether Martin likely would violate the securities laws in the future. Accordingly, the court denies the request to reconsider the § 5 injunctive relief ruling.

The court also enjoined Martin and Platforms from future violations of § 10(b) and Rule 10b-5. As with Draper, the validity of this injunction will be determined upon application of <u>Silicon Graphics</u>' deliberate recklessness standard to the Rule 10b-5 claims against Martin and Platforms. The court defers ruling on the Rule 10b-5 injunction against Martin and Platforms until the parties have completed further briefing on this scienter issue.

### C. Rule 62 Motions to Stay Judgment

Defendants request a stay of (1) the officer and penny-stock bars, (2) all monetary relief, and (3) possibly the injunction against violations of § 10(b) and Rule 10b-5. Alternatively, Defendants seek "a significantly reduced injunction and supersedeas bond." (Platforms' Mot. for Stay at 1.) They ask the court to enforce the stay during the pendency of their motions for reconsideration and their appeal.

#### 1. Legal Standards

FRCP 62 allows court to stay the enforcement of a judgment in several circumstances.

Under Rule 62(b), for the security of the opposing party, a court may stay a judgment pending

the disposition of a Rule 59 or Rule 60 motion.

Under Rule 62(c), a court may stay an injunction pending appeal. Rule 62(d) also requires a court to stay a money judgment when an appeal is taken and the court approves a supersedeas bond posted by the appellant.[7]

In determining whether to issue a discretionary stay pending appeal, the court considers: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987). The Ninth Circuit has set forth the following "sliding scale" to govern this determination: "At one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury. At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor." Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983) (internal citations omitted) (relative hardship is critical to sliding-scale evaluation); see also Golden Gate Rest. Ass'n v. City of San Francisco, ___ F.3d ___, 2008 U.S. App. LEXIS 364, at *4-*5 (9th Cir. Jan. 9, 2008) (explaining standards for stay pending injunction).

### 2.     Injunctive Relief

In regard to the Rule 10b-5 judgment, Platforms, Martin, and Perry ask the court to stay (1) the officer and penny-stock bars imposed against Martin and Perry, and (2) possibly the injunctions

---

[7]The district court has discretion to fashion the amount of the bond, "to allow other forms of judgment guarantee," Int'l Telemeter Corp. v. Hamlin Int'l Corp., 754 F.2d 1492, 1495 (9th Cir. 1985), or to waive the bond requirement, see Townsend v. Holman Consulting Corp., 881 F.2d 788, 796-97 (9th Cir. 1989), vacated on reh'g on other grounds, 929 F.2d 1358 (9th Cir. 1990) (en banc) (financial hardship is most common justification). In determining whether to waive the bond requirement, the court may consider:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether 'the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money'; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

Dillon v. City of Chicago, 866 F.2d 902, 904-05 (7th Cir. 1988) (internal citations omitted).

- 13 -                                                          04cv2105

against future § 10(b) and Rule 10b-5 violations. These defendants do not seek a stay of the injunctive relief connected to the § 5 judgment. Draper was only enjoined in connection with the Rule 10b-5 order, and he does not seek a stay of this injunctive relief.

In light of the grant of reconsideration of the Rule 10b-5 summary judgment rulings and the absence of prejudice caused to the SEC by a stay, the court finds a stay appropriate as to the Rule 10b-5-related injunctions and officer and penny-stock bars, pending the outcome of further briefing on the issue of scienter. See FRCP 62(b). Although Draper did not request a stay of the injunctive relief, the court also finds a stay appropriate as to Draper. The court defers ruling on whether a stay should be imposed pending appeal, see FRCP 62(c), until the court has reached a final resolution on the scienter-related briefing.

### 3. Monetary Relief

Defendants also ask the court to stay the monetary judgments awarded in connection with both the Rule 10b-5 and § 5 orders.

At the August 24, 2007 hearing on Platforms' motions, the parties discussed the moving defendants' alleged financial difficulties. Platforms, Martin and Perry claimed that they are in a precarious financial position and are currently unable to satisfy the monetary judgments. In Martin's declaration contained in the motion for stay, Platforms submitted its unaudited balance sheet as of June 30, 2006, which shows assets of $89,379 and liabilities of more than $8 million. (See Platforms' Mot. for Stay, Martin Decl., Ex. 28.) While the individual defendants made no similar showing of inability to pay, they offered to submit Martin's and Perry's tax returns for the court's in-camera review. Defendants had not presented these documents to the SEC, and the court declined to perform this review. The parties then indicated they would try to work out an agreement whereby Defendants would share personal financial information with the SEC pursuant to a protective order or other appropriate protective measure. The SEC also suggested in its opposition to Draper's motion that it would be willing to make similar arrangements with Draper, who seeks a stay of the money judgment but does not claim inability to pay.

A telephonic status conference is hereby set for **Wednesday, February 6, at 10:30 a.m.**[8] The purpose of this conference will be to discuss, among other matters, the overall status of the case and the progress made by the parties on disclosure of Defendants' financial information.

Based on the grant of reconsideration of the Rule 10b-5 summary judgment rulings and the absence of prejudice caused to the SEC by a stay, as well as the court's discussion with the parties at the August 24, 2007 hearing, the court finds a stay appropriate as to all monetary relief. The stay of all monetary relief shall remain in place until further notice from the court following the February 6 telephonic status conference.

The court also defers ruling on whether a stay should be imposed pending appeal, see FRCP 62(c), (d), and will reach this issue as appropriate following the February 6 telephonic status conference and the receipt of the additional briefing on scienter. The court likewise will not rule on Defendants' request for a waiver or reduction of the supersedeas bond requirement until that time.

### 4. Summary: Motions to Stay

The court grants a stay as to the Rule 10b-5-related injunctions and officer and penny-stock bars, pending the outcome of further briefing on the issue of scienter. The court also grants a stay as to all monetary judgments until further notice from the court following the February 6 telephonic status conference and the additional briefing. The court defers ruling on whether a stay should be imposed pending appeal or whether the supersedeas bond requirement should be reduced or waived.

### III. CONCLUSION

In sum, the court hereby takes the following action on the three pending motions:

1. The court **GRANTS** the motions for reconsideration as to the Rule 10b-5 judgment, on the bases stated above.

   a. The parties are **ORDERED** to submit further briefs regarding the § 10(b) and Rule 10b-5 liability of Martin and Perry. The parties shall address only the application of the "deliberate recklessness" scienter standard as set forth in Silicon Graphics. This briefing shall be limited to the evidence that was before

---

[8] The telephonic status conference shall go forward at this time unless the court and parties arrange for an alternative time.

the court during the initial Rule 10b-5 summary judgment proceedings. The SEC is ordered to file and serve a supplemental brief, limited to 15 pages, no later than ten days from the date this order is entered. Defendants may file a collective response, limited to 15 pages, no later than ten days after being served with the SEC's brief. The SEC may file a reply limited to ten pages, no later than four days after being served with Defendants' response. Any supporting documents will not be counted toward the page limits, but the court strongly urges the parties to refrain from filing lengthy declarations. The court also orders the parties not to re-submit exhibits originally submitted in conjunction with the summary judgment motion, but instead to reference these exhibits clearly in the supplemental briefs. Thereafter the court will take the issue of Rule 10b-5 liability under submission and issue a written order in due course.

  b. The grant of summary judgment against Draper based on Rule 10b-5 liability for the May 15, 2000 press release is **VACATED**. The civil penalty against Draper is accordingly reduced from $80,000 to $40,000, without prejudice to a determination that Draper should not bear liability for the March 8, 2001 press release.

2. The court **DENIES** the motions for reconsideration as to the § 5 judgment.

3. The court **GRANTS** the motions to stay the Rule 10b-5-related injunctions and officer and penny-stock bars, pending the outcome of the additional briefing on the issue of scienter.

4. The court **GRANTS** the motions to stay all monetary relief, until further notice from the court following a telephonic status conference **SCHEDULED** for February 6, 2007, at 10:30 a.m.

5. The court **DEFERS** ruling on whether any stay should be imposed pending appeal, or whether the supersedeas bond requirement should be waived or reduced, and will

//

address these issues as appropriate after all additional briefing is received and the February 6 telephonic status conference has been held.

**IT IS SO ORDERED.**

**DATED:  January 31, 2008**

                                                                                 **Hon. Jeffrey T. Miller**
                                                                                  **United States District Judge**

cc:        All parties